You may proceed. Thank you. Good morning, and may it please the Court. My name is Kristina Wabiszewski, and I am from Bullion-Lardner, and I represent Daniel Wilson in his request for habeas corpus relief under 28 U.S.C. 2254. Mr. Wilson requests habeas relief under three independent bases. First, insufficient evidence supports Mr. Wilson's conviction under Wisconsin Statute 948-025 sub 1b. A cliché informs our discussion here. Location, location, location, or really one location. The location of predicate acts show that only one act could have occurred within the state's specified time period. Because the state's case lacks sufficient evidence, even otherwise minor errors can have great prejudicial effect here. Can I ask you a question about that? Yes. What do we do about the video? The video was admitted as substantive evidence. Yes. And in the video, she talks about multiple events occurring at multiple occasions. Correct. And there's, I mean, look, the age of the child here. I mean, it's not a surprise that they weren't able to nail down specific times and dates of these horrific events. You know, children have trouble remembering Tuesday from Thursday of last week. So what do we do about the video, which I think is substantive evidence? I would agree. And I think that a careful review of both the video lined up with her trial testimony does, in fact, show that it is fairly consistent. But fairly consistent is not enough, though, in habeas relief. The jury had the case, and then the Wisconsin Court of Appeals dealt with the case. Yes. So you have a high burden here. I understand. I would rephrase and say it is consistent. And I have record citations that would support the acts that FT, the victim, spoke about in the video. The forensics video interview does, in fact, line up with her trial testimony. As I was saying – I'm sorry, counsel. You said you have record citations to demonstrate that. I had been under the impression, frankly, that this was a situation where we just had inconsistent testimony, inconsistent accounts from the victim about times and places. Is that right? There is some inconsistency. I think, as Judge Kirsch had said, that's inevitable. So there are three locations, right, where this occurred. There's the Buffum Street house, the 6th Street house, and the 28th Street house, in that order, right, during the specified period. There is no evidence that anything occurred at the Buffum Street house. None. The 6th Street house, FT refers to in both the forensics video and her trial testimony as my house or the new house. On page 85, 84 and 85, and page 86 of her trial testimony, she refers to events that occurred at the 6th Street house. And at minute 18, 18 minutes and 45 seconds, rather, and minute 16 and 10 seconds, she refers to events that occurred at the 6th Street house, my house or the new house. And it is consistent. And those are the only times in both her trial testimony and her video interview that she refers to events that occurred at that house. The homes are very distinct as well in her testimony. At the 6th Street house, the girls had their own room. At Anthony's granny's house, as it's referred to, the children shared a room and slept on the floor. So I would say that her testimony regarding the predicate acts, while you do have to sort of, you know, carefully assess it, it is consistent about what occurred when and where. So there were events at the 6th Street house? There were sexual assaults at the 6th Street house? There was one sexual assault at the 6th Street house. Only one. Was this sufficiency argument about times, places, and so on made to the jury? It was not. Okay. So as a result, in essence, the government gets the benefit of every doubt, right? I would agree. Okay. The children were removed from the 28th Street house, which the victim refers to as Anthony's granny's house. Yes. Shortly after they moved there, right? It was a compressed time frame. It was a compressed time period. In fact, they didn't actually move into Anthony's granny's house until May 13th, which was after the close of the charging period, which ended on May 5th. Right. And that's the premise of this argument. Correct. Her testimony about what happened there is outside the charged time period. I agree. But even understanding that, the jury could, given her age, given her developmental disability, could conclude that she was simply mixed up about the time frame and was testifying about a course of conduct. Sexual assaults that occurred while the defendant was, again, living with the family because he had previously lived with the family. Then the relationship with her mother broke off, and then it resumed. And she's testifying about a course of conduct during that period of the resumption of the relationship, which spanned three different residences because of the interventions of social services. So even accounting for the date issues, the jury could reasonably conclude that she's just imprecise about her dates and that she's testifying about a whole course of sexual assaults that occurred across three different residences. I understand what you're saying. And I think that, to clarify, too, the argument isn't the date, right? It's the location that informs when it occurred. So anything that she testified or otherwise spoke to in the video about Anthony's grannies is outside of that course of conduct as defined by the specified period. Right, but my point is that her identification of the assault as having occurred at that house could reasonably have been mistaken, or so a reasonable jury could conclude, that it was something that happened at a different location, and that she's young and she's developmentally disabled. And that's the premise of our argument. I think that our argument is that it is clear that she was testifying to events that occurred at a specific place. She would, in one instance, for example, and this is in our brief as well, trial counsel asked her, you know, was this at granny's house? And she corrects trial counsel and says, it wasn't Anthony's granny's. It was her paternal grandmother's house, a different grandmother's house that she's referring to. And it is not in regard to, you know, a predicate act of sexual assault. But I think that it shows that she has enough cognition to differentiate where these different acts are occurring. And because of that, I would say it is unreasonable for a jury to conclude that she was confused about where these things occurred. They were different, right? As I had discussed, you know, the rooms were different, the layout was different. She was very clear about, you know, where things happened. What do we make of the lesser included instruction? The jury received the lesser included instruction and they rejected it. I'm not sure, I think. Because isn't that a problem? Because the major difference between the lesser included instruction and the count of conviction or the counts of conviction are the number of sexual assaults over that time period. And so the jury was instructed that they could convict on a lesser included offense if they didn't find essentially that she was assaulted in three locations or three separate occasions during that time period. And so based upon the existence of that instruction, don't we have to conclude that the jury affirmatively rejected that lesser included offense? And I believe the lesser included offense was under 948.02, which is the first degree sexual assault of a minor statute, which is, in effect, the same act, right? It's the same elements, the same penalties. And I think the Johnson case, which is sort of informative here, the state in that case, actually in its brief, had said that perhaps the state didn't believe that it could convict under 948.02 and therefore went with 948.025, meaning that, and this will get into. Well, that could be. I mean, you know, you put an 8-year-old or 9-year-old victim on the stand and you don't know exactly how it's going to go in front of the jury, right? Right. And, of course, defense counsel here didn't argue the timing, probably for good strategic reason, right? This is a very difficult case, so when you get up and argue legal technicalities in front of a jury, you risk inflaming and infuriating the jury, right? So maybe he went with the didn't happen or it wasn't him, and she's kind of making this up. Yeah. I can't speak to trial counsel's strategic decision not to argue that, but I would say that that concession or admission in the Johnson brief is pretty informative, and I think it cuts to issues of jury unanimity that are, again, also central to this issue. And I would just say that, excuse me, I'm sorry. Could I ask? Yes. Could a jury decide, given the deference we have to give this verdict, well, we believe her testimony that it happened, and we believe, I mean, the defense theory about when supposedly all of the assaults she described happened after the charging date is wildly improbable. And so we're going to believe part of what she says but not everything, and we're going to believe that this happened within this wide, almost year-and-a-half time frame. Is that unreasonable by the jury? I would say it is given the evidence in front of it, particularly because, as I have said, the victim, rather, was clear about where these events occurred, and the state will argue, I'm sure, that the exact dates of any particular predicate act is irrelevant, and that's not in dispute. But what is in dispute is this charging time period. So anything outside of it, it's unreasonable for the jury to draw that in. Right? It would be unreasonable to believe the child was correct about some things but incorrect about others? Juries decide that all the time. Certainly, yes, and I agree with that, Your Honor. Well, why isn't that enough to save the verdict then? I think it's not enough to save the verdict because we have evidence of one act of sexual assault that would have occurred within the charging time period from FT's testimony and the video interview. Those acts that occurred after May 5th, after the charging time period closed, cannot be used to, because- That's circular. I understand your point. But the question is, a jury is hearing testimony from this child about many sexual assaults. Some things are clear, some things are not. We asked the jury, and the defense did not ask the jury to do this, to parse through this. But I assume you don't have an objection to the way the jury was instructed. So the jury sorts through and says, well, we think it happened, and the most likely way it would have happened would have been at these other locations at an earlier time. And I would just say again, I think that the evidence is fairly clear that this- I think it's unreasonable for them to pull in evidence where the victim said, this happened at this location, where we know it's outside the time period to find three acts of sexual assault occurred. Okay. Thank you. You've got a Strickland claim, too, but your time is running down. Yes, it is. So if you'd like to say a few words about that. Yes, I would. Just a few comments. Given the insufficiency of the evidence in this case to convict under 948.025, Mr. Wilson's ineffective assistance of counsel arguments were particularly salient. I'm just going to highlight a few things. My time is running out. First, the SANE nurse's notes and statements in FT's medical records were testimonial and prejudicial in violation of Strickland. And I would say that the Supreme Court's recent decision in Norwood is particularly helpful here because it shows how to deal with these types of medical- part medical and part forensic records. And I think that Norwood's suggestion of how to deal with them isn't novel. It suggests engages in an in-limiting process to redact the records and then have the underlying witness testify to those redacted portions. And even without these insights of Norwood, I think it's apparent here that the sexual assault nurse examiner, and I highlight the full acronym and the name because her very title encompasses the crime she is seeking to investigate, was for the primary purposes of collecting evidence of abuse. By the time the appointment had occurred, the police were already involved, the family had a changed parenting plan in place, and as Dr. Gwynn had said, the appointment was not routine. And this was prejudicial because- I'm sorry, I know my time is out, but it's prejudicial. Okay. Thank you very much. Thank you. Mr. O'Brien. May it please the court. Coleman V. Johnson teaches that this court must give double deference to the state court's determination that the evidence was sufficient to convict Mr. Wilson. Deference to the reasonableness of the Wisconsin Court of Appeals' determination that the evidence was sufficient, and deference to the findings by the jury and the inferences drawn by the jury finding that Mr. Wilson did commit these acts within the charging time frame. We are dealing with an eight-year-old child with cognitive disabilities, a child who lived at three separate residences during this time frame, who had two grandmothers, a maternal grandmother, and not technically her second grandmother, but her mother's boyfriend's grandmother, her mother who she stayed with as well. This is enough to confuse any child, even a much older child, even a much more less or not disabled child. I encourage this court to review the video of the forensic interview. She describes, I counted, six separate types of sexual misconduct that he perpetrated on her. And over, she talks about her granny's house, her mama's house, her new house. All of these were within the charging time frame. It is also very possible that Mr. Wilson exalted her when they lived for either six or seven days shortly after the charging time frame at her, at Wilson's mother's house, which she called Anthony's granny. But that does not in any way diminish the strength of her testimony on which a jury could reasonably rely and draw reasonable inferences that before then she was assaulted multiple times at her preceding two residences in the city of Milwaukee. Her testimony, of course, is confirmed by the powerful physical evidence that she contracted genital herpes. And Mr. Wilson had herpes at this time. And this court must affirm unless it can conclude that no rational jury could have arrived at this verdict. That is the standard under Jackson v. Virginia. And I think the evidence is compelling that not only was this verdict reasonable, it was no alternative but to find him guilty of this charge. And I also briefly, with respect to the Strickland claim, that also is entitled to double deference in this court. This court defers to the Wisconsin Court of Appeals assessment of counsel's performance, and it must defer also to counsel's decisions. And again, as Shin V. Kayer teaches, the AEDB standard takes on special importance, I think is the phraseology, in Strickland cases because Strickland allows the courts to go behind the state rules of waiver and forfeiture, and it enmeshes this court in determining questions of state law that it would normally not have to determine, normally should not determine. And so with regard to Strickland, we would argue that, again, given the double deference, that the decision of the Wisconsin Court of Appeals with respect to both of the Strickland claims is reasonable. Can I ask you, Mr. O'Brien, about the failure to object to what I'm going to loosely call the profile evidence, that is the questioning of experts on sexual assault of youngsters, that, in essence, to describe typical patterns in ways that would have included the defendant here. That, I have to say, struck me as problematic, as a bit of a cheap shot from the prosecution. Well, first of all, I don't see that this was profile evidence. What this evidence was introduced for was to establish, first of all, the nature of the relationship, why she delayed in reporting, she did not reveal the assaults until after her genital herpes was discovered, and the familiar nature of this relationship, which is, again, this is, in other words, her complaint, her testimony is consistent with that of many sexual assault victims. We're talking about victims now. We're not talking about the character of the perpetrator. We're talking about victims and the consistency of their behavior in failing to disclose these things, fearful about disclosing these things, not wanting to ruin the family, not wanting to alienate her mother. That was the primary purpose. Judge Hamilton makes an interesting point there, especially in a case like this, because I don't think those things really applied here. I mean, she went to the doctor, and she didn't have any trouble explaining how that happened, and relatively quickly after it happened. And I think the evidence that was put in, which is this profile evidence, I kind of agree that the characterization of the evidence, this profile evidence, is probably entirely unnecessary, because it's just obvious. I mean, it's just an observation. It just seems obvious to me. But, you know, if this was a case, I think the argument would carry more weight if this was a case where the victim had not disclosed the conduct for four years after it happened or five years after it happened. Here, it was a relatively short period of time. And as soon as she was addressed by a doctor, she disclosed it. But she may have never disclosed it had she not contracted herpes. Well, that's true. And don't you think it's reasonable for a jury to question that, well, this wasn't a family, this was the mother's boyfriend, so maybe this doesn't apply. And then to put on expert testimony to say, you know, this often happens in situations where the mother has a live-in boyfriend, and it's like a family, a unit. And I just don't think that's an unreasonable area, and these people were qualified by training and experience with thousands of child sexual assault victims who were in similar situations to render this expert testimony. And I think one can debate under the Wisconsin Rules of Evidence whether the trial court and the Court of Appeals properly applied, 907-02, 904-01, and 904-03. But that's really not the ---- this Court shouldn't be second-guessing state court determinations on those issues. And to your point that it really wasn't necessary, well, if that's true, then there's really not unfair prejudice. This sort of expert testimony is routinely elicited in child sexual abuse cases in Wisconsin courts because it bears on the credibility of the witness, the victim witness, and addresses defense attacks on the credibility of the witness, the victim's testimony, based on delayed reporting, which is a routine defense in these cases. He attacked her credibility both on cross-examination of her, but more importantly, in his own testimony, where he got up on the stand and he said, I never assaulted her any time, anywhere, and she got herpes from sharing towels in the house or using my silverware. And so expert testimony explaining why something like this could happen and why this child didn't report anyone until a coposcope was inserted into her and she screamed out, someone did this to me, that that, I think, I'll stand on my argument in my brief, I think that's highly relevant expert testimony. And if it's not, its probative value is not substantially outweighed by the danger of unfair prejudice or confusion of the issues. Unless there are any further questions, I'll conclude my argument. Thank you. Ms. Swiatoshevsky, your time had expired, but you may have an extra two minutes if you have something to say in rebuttal or to wrap up your argument. Thank you. I'll just take one more minute. In response to your question regarding profiling evidence, I would just agree that given where the state was with its case, I'm assuming it's confident in its case, that the profiling evidence at that point probably was a cheap shot. Could you address the point, though, that this is customary, common in Wisconsin prosecutions, which would have a lot to do with professional standards? I don't think that I can't speak anecdotally about that. I'm not really sure how often it's used in these types of cases. But I would say that in this case it was particularly troubling given the fact that there wasn't – especially I think the testimony regarding threats was troubling because there was no evidence in the record regarding threats. Given the fact, as I had stated, our position is that there was one act of sexual abuse that occurred within the specified time period, adding on to this sort of elusive evidence is that now there are these threats that have been thrown into the mix, none of which had occurred. FT didn't testify to it. Nobody else testified that he had actually made any threats against her. I think it impermissibly touches on his character and was highly prejudicial to his case, and defense counsel should have objected to its introduction. Otherwise, I would say that Mr. Wilson requests habeas relief for these reasons, and thank you very much for your time, especially for the extra time you gave me. Thank you. Yes, and thank you very much. Our thanks to both counsel. The case is taken under advisement.